**[DO NOT PUBLISH]**

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 19, 2005
THOMAS K. KAHN
CLERK

_____

**No. 05-12986**
**Non-Argument Calendar**

_____

BIA No. A77-570-912

HOOD KATENDE,

                                                        Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                        Respondent.


_____

**Petition for Review of an Order of the**
**Board of Immigration Appeals**

_____

**(December 19, 2005)**

Before BLACK, BARKETT and PRYOR, Circuit Judges.

**PER CURIAM:**

Hood Katende petitions for review of the final order of the Board of Immigration Appeals that affirmed the decision of the Immigration Judge to deny Katende's application for asylum, withholding of removal, and relief under the Convention Against Torture. Katende argues that the BIA and IJ should not have found his testimony incredible. We deny the petition.

## I.  BACKGROUND

Katende, a citizen of Uganda, entered the United States in December 1998 as a non-immigrant visitor. Katende filed an application for asylum in October 1999, and, in December 1999, the Immigration and Naturalization Service issued a notice to appear that charged Katende with overstaying his visa. See 8 U.S.C. § 1227(a)(1)(B).

In his application for asylum, Katende alleged that he had suffered a series of arrests, beatings, and detentions at the hands of officials of Uganda. He also alleged that he had been a member of the Allied Democratic Front (ADF), but, after he left the organization, its members threatened his life. He argued that these events established either past persecution or a well-founded fear of future persecution, which entitled him to asylum. At his hearing before the IJ, Katende presented five primary sources of evidence: (1) his testimony at the hearing, (2) his written statement in his asylum application, (3) statements he made during his asylum interview, (4) a letter from a physician who treated him on his arrival to the

United States, and (5) testimony by his wife, who also sought asylum under Katende's application. The IJ noted that Katende presented no evidence of his persecution other than his testimony and the testimony of his wife.

The IJ found that several inconsistencies in the Katende's testimony undermined his credibility: (1) Katende testified that he was first arrested in May 1994 but, in his asylum interview, he had stated the arrest occurred in December 1995; (2) Katende testified that he was cut by a bayonet during his first detention, but he did not describe this injury in either his asylum application or his asylum interview; (3) Katende testified that a scar on his left knee was caused by a truck accident that allowed him to escape following his third arrest, but he told his physician that the scar was caused by a knife wound inflicted while he was detained; (4) Katende testified that, during his second arrest, he let the police into his room, but his wife testified that the police broke down the door; (5) Katende testified that his third arrest occurred while he was at work and the police escorted him to his house to conduct a search, but his wife testified that she was home when the house was searched and did not see Katende there; (6) Katende told his physician that he had been raped while in detention, but Katende did not testify that he had been raped; and (7) Katende testified that when he joined ADF he did not know the group used innocent civilians as human shields, but his educational background and political activity should have made him aware of this practice.

3

Because "[t]he credibility of [Katende] is of extreme importance in assessing the claim," the IJ concluded that Katende had failed to meet his burden to establish past persecution or well-founded fear of future prosecution. The IJ denied Katende's application.

Katende appealed the decision of the IJ to the BIA. The BIA adopted and affirmed the decision of the IJ. The BIA concluded that the "record reflects that the Immigration Judge cited an adequate basis for an adverse credibility finding and that [Katende] on appeal has not provided an adequate explanation for the shortcomings in his case sufficient to overcome that adverse credibility finding." The BIA dismissed the appeal, and Katende petitioned this Court for review.

## II. STANDARD OF REVIEW

When the BIA adopts the opinion of the IJ, this Court reviews the decision of both the BIA and the IJ. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "While we consider the BIA's interpretation of applicable statutes de novo, we are also obliged to defer to the BIA's interpretation if that interpretation is reasonable." Id. (internal punctuation and citations omitted). "A factual determination by the BIA that an alien is statutorily ineligible for asylum or withholding is reviewed under the substantial evidence test," id., and "the reviewing court must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id.

4

(quoting Lorisme v. INS, 129 F.3d 1441, 1444-45 (11th Cir. 1997)). "Credibility determinations likewise are reviewed under the substantial evidence test." D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004). "[T]he test is highly deferential, and [] we must defer to the BIA unless a reasonable factfinder would have to conclude that the requisite fear of persecution existed." Al Najjar, 257 F.3d at 1284 (internal citations and quotations omitted).

## III. DISCUSSION

Katende argues that the IJ and BIA erroneously found his testimony was not credible. An adverse credibility finding is not itself a ground for denying relief, but the finding may support the conclusion that an alien has failed to meet his burden to prove the statutory requirements for relief. See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286-88 (11th Cir. 2005). "[A]n adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant," but "[i]f the applicant produces no evidence other than his testimony, an adverse credibility determination is alone sufficient to support the denial of an asylum application." Id. at 1287. The only evidence that Katende presented involved his personal accounts of the alleged persecution.

The IJ's finding of adverse credibility was supported by substantial evidence. The IJ identified seven significant discrepancies in the evidence presented by Katende. The BIA focused on three discrepancies—the date of

5

Katende's first arrest, the nature of Katende's injuries, and the allegations of rape—and found them sufficient to support an adverse credibility finding. We agree with the IJ and the BIA that these events were central to Katende's claim of persecution; the inconsistencies in Katende's testimony support an adverse credibility finding.

Katende further argues that "the IJ relied on selective [inconsistent] portions of the record while ignoring other [consistent] portions." We disagree. The IJ and BIA did not focus on minor details but on substantial discrepancies central to Katende's alleged persecution. The period in which Katende was first persecuted, the manner in which he was injured, and whether he was raped are significant episodes that one would expect a person to recall consistently. We cannot say the record compels the conclusion that Katende established entitlement to any form of relief.

## IV. CONCLUSION

We deny Katende's petition for review.

**PETITION DENIED**.